UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THE ANDREW GOODMAN FOUNDATION,<br><br>              Plaintiff,<br><br>   v.<br><br>MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners,<br><br>              Defendants. | Civil Action No. 19-cv-955 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

      Plaintiff THE ANDREW GOODMAN FOUNDATION ("AGF") files this Complaint for Declaratory and Injunctive Relief against Defendants MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners, and alleges as follows:

**NATURE OF THE CASE**

      1.     In the 2016 general election, the United States experienced record-breaking student voter turnout. Nationwide student voter turnout increased by at least three percentage points from 2012, with a notable four percentage point increase among student voters aged 18 to 21. Despite this record national growth, Wisconsin experienced the second-largest decline in student voter turnout in the country. Some areas of Wisconsin reported declines in student voting of more than 11%, and many areas of the state had declines of 5% or more. While this decline is alarming, it is not surprising. It was precisely what the Wisconsin Legislature and former governor Scott Walker intended when they enacted Wisconsin Act 23 ("Act 23") in 2011 and imposed, for the first time, a photo ID requirement for voting. The photo ID requirement directly targets Wisconsin's youngest voters, placing stringent restrictions on the use of student IDs—the very type of photo

1

IDs that Wisconsin's newest and youngest voters are most likely to present to vote ("Student Voter ID Restrictions"). As the 2020 general election fast approaches, Wisconsin is again projected to be a key battleground state. Meanwhile, the Student Voter ID Restrictions remain in place and, without action from this Court, the hurdles young Wisconsinites faced when voting in 2016 will continue in 2020. Plaintiff brings this action to ensure that young Wisconsin voters will no longer be burdened by the discriminatory Student Voter ID Restrictions and will be able to fully exercise their right to vote.

2.   In 1971, Wisconsin joined 43 states in the nation to ratify the Twenty-Sixth Amendment and render unconstitutional the denial or abridgement of the right to vote on account of age. Notably, the Twenty-Sixth Amendment is the quickest Amendment to be ratified in U.S. history, and the most recent voting-rights-related Amendment to be ratified. The speed of its ratification—less than 100 days—was largely motivated by a unanimous cross-partisan recognition that young people infuse democracy with a unique perspective critical in upholding the ideals of our nation.[1] Indeed, during the ceremonial certification of the Amendment, President Nixon recognized the unique value that youth voters offer by infusing democracy with "some idealism, some courage, some stamina, some high moral purpose that this Nation always needs, because a country, throughout history, we find, goes through ebbs and flows of idealism." Richard Nixon, Remarks at the Ceremony Marking the Certification of the 26th Amendment to the Constitution, Richard W. Nixon Foundation (Jul. 5, 1971).

3.   By enacting the Student Voter ID Restrictions, Wisconsin has turned its back on this protected group of voters who are invaluable to upholding the nation's ideals. In 2011, Republicans took control of the Wisconsin governor's office and state legislature. On the heels of a showing of strong Democratic support among young Wisconsinites in the 2008 general election—57.5% of voters aged 18 to 29 voted for President Obama—the legislature and Governor Walker promptly enacted the Student Voter ID Restrictions, severely limiting the types of student

---

[1] The Amendment passed the Senate unanimously 94-0, and the House nearly unanimously 401-19.

IDs that young voters can use to vote. Unlike the other acceptable forms of photo ID (all of which young voters are less likely to possess), a student ID is only accepted if it contains the issuance date, an expiration date no more than two years after the issuance date, and the holder's signature. Wis. Stat. § 5.02(6m)(f). And even if the student ID complies with the statutory requirements, it will only be accepted if the holder can affirmatively prove through other documentation that he or she is currently enrolled in the school. *Id.*

4. None of these restrictions is relevant to confirming a voter's identity, which is made clear by the fact that the other forms of photo ID accepted in Wisconsin are not subject to this laundry list of requirements. *See id.* § 5.02(6m). Moreover, while the purported purpose of the restrictions is to protect against voting fraud by students, there have not been any reported occurrences of voting fraud by any student in Wisconsin, either before or after the enactment of the Student Voter ID Restrictions. The real-world effect of the restrictions, therefore, is not to address a problem that truly exists, but, rather, to make it significantly more difficult for young Wisconsin voters to exercise their constitutional right to vote.

5. The obstacles to voting caused by the Student Voter ID Restrictions are increased by the fact that most of the universities, colleges, and technical institutions in Wisconsin do not, as a regular practice, issue student IDs that meet the requirements of the Act. As a result, most of the nearly 300,000 students enrolled in these institutions must take extra, affirmative steps to obtain the specific type of ID that is needed to comply with the Student Voter ID Restrictions. In many cases, students are not even aware of the need to obtain this type of ID and, even if they are, they lack information about the process for obtaining them.

6. The upshot of this statutory scheme is that when the Student Voter ID Restrictions went into full effect in 2016, young voter turnout in Wisconsin made a steep decline among voters between ages 18 and 29. Hundreds of thousands of Wisconsinites did not vote as a result of the state's new photo ID requirements, including the Student Voter ID Restrictions. And this was in a state that Republican candidate, Donald Trump, won by just 22,748 votes.

7. Given the discriminatory motive underlying Act 23, the statute has predictably been the subject of a series of legal challenges since its passage. Many changes resulting from Act 23, including the photo ID restrictions, have already been challenged and found by district courts to be unlawful under the Fourteenth Amendment and the Voting Rights Act.[2] In *Frank v. Walker*, Case Nos. 11–CV–01128, 12–CV–00185 (E.D. Wis.), for example, Wisconsin voters and the League of United Latin American citizens challenged the photo ID requirement as a whole, arguing that the requirement's heavy burden on voting is not justified by the state's interests. In *One Wisconsin Institute, Inc. v. Thomsen*, Case No. 15-CV-324 (W.D. Wis.), voters and advocacy groups successfully challenged several restrictive voting requirements that Act 23 put into place including part of the voter ID law.

8. None of these cases, however, have directly challenged the Student Voter ID Restrictions, which were enacted with the intention of burdening and abridging the voting rights of young voters, under the Twenty-Sixth Amendment. Although the Student Voter ID Restrictions serve no legitimate state purpose, they remain in effect and, with less than a year until the 2020 general election, pose the very real threat of again disenfranchising hundreds of thousands of young voters in Wisconsin, including the students and young voters that AGF serves. Accordingly, Plaintiff brings this suit under the Twenty-Sixth Amendment to prevent the continued discrimination against young voters who are positioned to play a large role in the upcoming election if they are able to effectively exercise their right to vote. Plaintiff seeks a declaration that the Student Voter ID Restrictions are unconstitutional and an injunction preventing their enforcement.

---

[2] Those decisions are currently being appealed. *See One Wisconsin Institute, Inc. v. Nichol*, Nos. 16-3083, 16-3091 (7th Cir.); *see also Frank v. Walker*, Nos. 16-3003, 16-3052 (7th Cir.).

## JURISDICTION AND VENUE

9. Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of a right secured by the United States Constitution.

10. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

11. This Court has personal jurisdiction over the Defendants, the Commissioners of the Wisconsin Elections Commission, who are sued in their official capacities only.

12. Venue is proper in the U.S. District Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to Plaintiff's claim occurred there.

13. This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

14. Plaintiff, THE ANDREW GOODMAN FOUNDATION, INC., is a nonpartisan, nonprofit organization with the mission of making young voices and votes a powerful force in democracy. In the summer of 1964, Andrew Goodman, AGF's namesake, participated in Freedom Summer, a voter registration project aimed at registering African-American voters in Mississippi. On Andrew Goodman's first day working on that project, June 21, 1964, he and his fellow civil rights advocates James Chaney and Michael Schwerner were kidnapped and murdered by members of the Ku Klux Klan. Today, AGF supports youth leadership development, voting accessibility, and social justice initiatives on campuses across the country with training, mentoring, and mini-grants to select institutions as well as providing other financial assistance to students. AGF's Vote Everywhere initiative is a national, nonpartisan, civic engagement movement of student leaders and university partners. The program provides extensive training and resources, as well as a peer network to support its student Ambassadors while they work to register voters, remove voting barriers, organize Get Out The Vote activities, and tackle important social justice

issues on their college campuses. Vote Everywhere is located on 59 campuses in 25 states plus Washington, D.C., including on the University of Wisconsin-Madison campus. To achieve its mission, AGF devotes substantial time, effort, and resources to training and supporting Student Ambassadors, including two at UW-Madison, who work with their home campuses to encourage voting, register voters, and advocate for the voting rights of their communities. The Student Voter ID Restrictions directly impact AGF's organizational mission of making young voices and votes a powerful force in democracy as they deter young voter participation in elections. As a result, AGF has had to and will continue to divert resources it could use on other campus activities and initiatives, as well as to expend additional resources, to educate students about the Student Voter ID Restrictions and to help them overcome the burdens the Student Voter ID Restrictions place on their ability to vote. Consequently, AGF has suffered and will continue to suffer injury. In addition, many of the students that AGF exists to serve will be prevented or are discouraged from voting because their student IDs do not comply with the Student Voter ID Restrictions and they do not have another form of accepted photo ID, or because they will be confused by the complicated and poorly-publicized Student Voter ID Restrictions.

15. Defendants MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, Jr., and MARK L. THOMSEN are the six Commissioners of the Wisconsin Elections Commission and are named as Defendants in their official capacities. Together, they comprise the Wisconsin Elections Commission, the body that administers and enforces Wisconsin's election laws, including the Student Voter ID Restrictions. *See* Wis. Stat. § 5.05. Defendants acted under color of state law at all times relevant to this action.

## STATEMENT OF FACTS AND LAW

16. In 2008, Wisconsin had the seventh-highest turnout rate for young voters, the majority of which were in, or had recently been in, college. Indeed, 57.5% of voters under 30 turned out to vote in Wisconsin. This high turnout led to many Democratic successes: President Obama won a firm majority of the vote (indeed, among voters under 30 he won 64% of the vote, while Senator John McCain won only 35%), Democrats took five of eight House of

Representatives seats, and the Wisconsin Governor's Office and Senate remained in Democratic control.

17. In 2011, Republicans took control of the Wisconsin Governor's Office and legislature. Within six months of the change in party control, Wisconsin's Republican-controlled legislature and Governor Scott Walker enacted Act 23, which imposed a photo ID requirement for voting. *See* Wis. Stat. § 6.79(2)(a).

18. Act 23 requires that a voter present a photo ID to vote, sharply limiting the acceptable photo IDs to a list of ten. Specifically, a state driver's license, state identification card, U.S. uniformed service ID card, a U.S. passport (either unexpired or expired after the date of the most recent general election), U.S. naturalization certificate issued not earlier than two years before the current election, an unexpired driving receipt, an unexpired state identification card receipt, an ID card issued by a federally recognized Indian tribe in Wisconsin, or a student ID from an accredited university or college in Wisconsin, or a technical college in Wisconsin that is a member of the technical college system, may be accepted to vote. *Id.* § 5.02(6m).

19. While Act 23 recognizes student IDs from certain institutions as an acceptable form of photo ID, it places severe restrictions on the type of student IDs that is accepted. As described above, a student ID is only acceptable if it contains the date of issuance, an expiration date not more than two years from the date of issuance, and the signature of the holder. It can only be used if the holder can further establish that he or she is currently enrolled in that school. *Id.* § 5.02(6m)(f). The Student Voter ID Restrictions place student IDs in stark contrast to the other forms of acceptable ID, none of which have the same or even similar restrictions.

20. Imposing stricter requirements on student IDs was not accidental; it was strategic. The vast majority of student IDs are held by voters between the ages of 18 and 24, the very contingent that came out to vote heavily for Democrats in 2008 and has continued to vote overwhelmingly Democratic in subsequent elections. Given that student IDs are automatically issued when these voters enter school, they are more likely to have student IDs than the other acceptable forms of photo ID. *See* Vanessa M. Perez, Project Vote, *Americans with Photo ID: A*

7

*Breakdown of Demographic Characteristics* (2015), http://www.projectvote.org/wp-content/uploads/2015/06/AMERICANS-WITH-PHOTO-ID-Research-Memo-February-2015.pdf.

21. At the time the Student Voter ID Restrictions were passed, it was also publicly known that most colleges, universities, and technical schools in Wisconsin did not, as a regular practice, issue student IDs that comply with the Student Voter ID Restrictions. This fact remains true today and while some institutions will issue a compliant student ID upon request, this information is usually not widely publicized or easily discoverable. And even when students learn about this compliant student ID, information costs compound as it is unclear to them why they might need two different student IDs and what the purpose of the second version is. Moreover, several Wisconsin colleges, universities, and technical schools do not issue compliant student IDs at all, in part because of the financial burden of needlessly reissuing student IDs every two years.

22. And despite the purported justification of deterring voter fraud, it is plain on the face of Act 23 that the Student Voter ID Restrictions do not serve any such interest, as Wisconsin law requires a voter to present his or her photo ID to vote and then requires officials to "verify that the *name* on the [ID] conforms to the name on the poll list or separate list" and "that any *photograph* appearing on [the ID] reasonably resembles the elector." Wis. Stat. § 6.79(2)(a) (emphasis added). Whether a student ID is scheduled to expire within two years of issuance, is signed, or the voter has proven current enrollment in a college has nothing to do with verifying the voter's name and photograph. As a result, an election official could verify the voter's name and photograph and still be forced to turn the voter away if the student ID is missing the other information. More importantly, there have been no documented occurrences of student voter fraud in Wisconsin in recent history, either before or after the Student Voter ID Restrictions were passed.

23. Indeed, after its passage the Republican legislators that backed Act 23 and the Student Voter ID Restrictions, such as then-Wisconsin State Senator Glenn Grothman, publicly boasted that a Republican presidential candidate would carry the state in 2016 specifically because of the photo ID requirement. Peter Andrew Hart, *Wisconsin Congressman Admits Voter ID Law*

8

*Will Help GOP Nominee Win In November*, Huffpost (Apr. 6, 2016), https://www.huffpost.com/entry/wisconsin-voter-id-2016_n_5704a2eee4b0a506064d90cf. When the Student Voter ID Restrictions took full effect in 2016, Donald Trump defeated Hillary Clinton in Wisconsin by 22,748 votes out of more than 2.9 million ballots cast, an exceedingly slim margin that is striking in light of the fact that up to 23,250 voters in just two surveyed counties did not cast ballots because of Act 23's photo ID requirements, including the Student Voter ID Restrictions. *See* Press Release, Elections Research Center at the University of Wisconsin-Madison, *Voter ID Study Shows Turnout Effects in 2016 Wisconsin Presidential Election* (Sept. 25, 2017), https://elections.wisc.edu/wp-content/uploads/sites/483/2018/02/Voter-ID-Study-Release.pdf.

24. Overall, the 2016 general election resulted in the lowest overall voter turnout in Wisconsin since the 2000 general election. A study conducted by the Institute for Democracy & Higher Education found that Wisconsin had the second-largest decline in student voter turnout in the country. Nancy Thomas et al., Institute for Democracy & Higher Education, *Democracy Counts: A Report on U.S. College and University Student Voting* (2017), https://idhe.tufts.edu/sites/default/files/NSLVE%20Report%202012-2016-092117%5B3%5D.pdf. And a Priorities USA study found that approximately 200,000 more people would have voted in Wisconsin had it not been for the new photo ID requirements. Memorandum from Guy Cecil, Chairman of Priorities USA, on Voter Suppression Analysis (May 3, 2017), https://www.demos.org/sites/default/files/publications/2017.05.03%20Voter%20Suppression%20Memo%5B1%5D.pdf.

25. The Student Voter ID Restrictions' onerous—and, in some cases, impossible—requirements have burdened and will continue to burden young Wisconsin voters in exercising their right to vote, deterring their participation in the upcoming 2020 general election. This is precisely what the Student Voter ID Restrictions were designed to do, in direct violation of the Twenty-Sixth Amendment.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**Twenty-Sixth Amendment**
**U.S. Const. Amend. XXVI, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202**
**Undue Burden on the Right to Vote on the Basis of Age**

26. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

27. The Twenty-Sixth Amendment to the U.S. Constitution provides in relevant part: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by . . . any State on account of age." U.S. Const. amend. XXVI, § 1. The goal of the amendment "was not merely to empower voting by our youths but was affirmatively to encourage their voting, through the elimination of unnecessary burdens and barriers, so that their vigor and idealism could be brought within rather than remain outside lawfully constituted institutions." *Worden v. Mercer Cnty. Bd. of Elections*, 294 A.2d 233, 243 (N.J. 1972).

28. The Twenty-Sixth Amendment guarantees young, qualified voters a substantive right to participate equally with other qualified voters in the electoral process and broadly protects young voters against not just blatant, but also subtle forms of discrimination. *See, e.g.*, *Colo. Project-Common Cause v. Anderson*, 495 P.2d 220, 223 (Colo. 1972) (holding based on "[h]istory and reason" that the Twenty-Sixth Amendment's "prohibition against denying the right to vote to anyone eighteen years or older by reason of age applied to the entire process involving the exercise of the ballot and its concomitants"). As a result, laws that have the purpose, at least in part, of denying or abridging the right to vote on account of age are unconstitutional.

29. Upon information and belief, the Student Voter ID Restrictions disproportionately abridge and deny the right to vote of young Wisconsinites. Upon information and belief, the Wisconsin legislature, in imposing arbitrary requirements on voters' use of student IDs, acted with the intent, at least in part, to disproportionately suppress the vote of young voters in Wisconsin. As such, these provisions violate the Twenty-Sixth Amendment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:

A. Declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Student Voter ID Restrictions violate the Twenty-Sixth Amendment to the United States Constitution;

B. Enjoining the Commissioners of the Wisconsin Elections Commission and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the current Student Voter ID Restrictions under the authority granted to this Court by Federal Rule of Civil Procedure 65(a) and 28 U.S.C. § 2202;

C. Awarding Plaintiff its costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

D. Granting such other and further relief as the Court deems just and proper, including requiring the Commissioners of the Wisconsin Elections Commission to permit voters to use student IDs regardless of their date of issuance, signature, expiration date, and the voter's ability to confirm current enrollment.

Dated this 19th day of November, 2019.    Respectfully submitted,

 

*/s/ David L. Anstaett*
David L. Anstaett
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
danstaett@perkinscoie.com

Marc E. Elias
Amanda R. Callais
Stephanie Command*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959

11

melias@perkinscoie.com
acallais@perkinscoie.com
scommand@perkinscoie.com

Gillian Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: (310) 788-3245
Facsimile: (310) 843-1244
gkuhlmann@perkinscoie.com

Yael Bromberg*
Chief Counsel for Voting Rights, The Andrew
Goodman Foundation
BROMBERG LAW LLC
43 West 43rd Street,
New York, NY 10036-7424
Telephone: (212) 869-5083
Facsimile: (201) 586-0427
yaelbromberglaw@gmail.com

*Counsel for Plaintiff The Andrew Goodman Foundation*
*\*Motions for Pro Hac Vice Forthcoming*